UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

From:

RAFIQ SABIR #55312-066

Federal Correctional Institution

Post Office Box 1000

Cresson, Pennsylvania 16630

RAFIQ SABIR, PLAINTIFF

                    v.                    COMPLAINT          **3:20-cv-01552 (VAB)**

                                    Civil Action No. _____

Warden M. Licon-Vitale

S.I.S. Lt. Adrian Hayes,

Captain Whitley,

D.H.O. Fulger,

Northeast Regional Director J. Ray Ormond,

DEFENDANTS

---

## I) JURISDICTION & VENUE

1. This is a CIVIL ACTION authorized under the Administrative Procedures Act, the Religious Freedom Reformation Act, and Bivens v. Seven Unidentified FBI Agents to redress deprivations under color of FEDERAL LAW of RIGHTS secured by the CONSTITUTION OF THE UNITED STATES. The COURT has jurisdiction under 28 USC §§1331 and 1343(a)(3). PLAINTIFF seeks DECLARATORY relief pursuant to 28 USC §§2201 and 2202. PLAINTIFF'S claims for INJUNCTIVE relief are authorized by 28 USC §§2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The DISTRICT COURT OF CONNECTICUT is an appropriate venue under 28 USC §1391(b)(2) because it is where the events giving rise to these claims occurred. It is also an appropriate venue because relevant previous court filings by PLAINTIFF are in this COURT.

## II) PLAINTIFFS

3. PLAINTIFF, RAFIQ SABIR, is and was at all times mentioned herein a prisoner in Federal Bureau of Prisons (FBOP). At the times mentioned herein

PLAINTIFF was at Federal Correctional Institution in Danbury, Connecticut, (FCI Danbury). PLAINTIFF alleges he was forcibly transferred out of FCI Danbury 10 July 2019 in retaliation for pending litigation filed by PLAINTIFF against FCI Danbury. As a result of retaliation PLAINTIFF is currently in FCI Loretto in Cresson, Pennsylvania.

### III) DEFENDANTS

4. DEFENDANT Warden M. Licon-Vitale was warden at the time, and was legally responsible for the operation of FCI Danbury, and for the welfare of all inmates in that prison. Warden Licon-Vitale was well aware of PLAINTIFF'S pending litigation, disciplinary charges levied against PLAINTIFF, and allegations PLAINTIFF made in that regard. Despite this, Warden Licon-Vitale actively participated in meetings and decisions on actions taken against PLAINTIFF, and ultimate disposition of PLAINTIFF.

5. DEFENDANT Captain Whitley directly supervised PLAINTIFF'S custody issues, validated PLAINTIFF'S detention in Segregated Housing Unit (SHU), participated in investigations, decisions on charges, and transfer of PLAINTIFF.

6. DEFENDANT S.I.S. Lt. Adrian Hayes directly made decisions regarding PLAINTIFF'S SHU detention, conducted investigations, levied charges against PLAINTIFF, and advocated for disciplinary transfer of PLAINTIFF and provided rationale for it.

7. DEFENDANT Disciplinary Hearing Officer (DHO) Fulger presided over PLAINTIFF'S DHO hearing, pronounced judgment, and meted out punishment.

8. DEFENDANT Northeast Regional Director J. Ray Ormond was responsible for receiving PLAINTIFF'S appeal, reviewing the fairness of PLAINTIFF'S hearing, evaluating PLAINTIFF'S constitutional claims, and deciding whether to sustain or to reverse DHO ruling.

9. Each DEFENDANT is sued individually and in her/his official capacity. At all times mentioned in this COMPLAINT each DEFENDANT acted under color of Federal Law.

# I☑) FACTS

## A) Background:

10.   PLAINTIFF has been in custody of FBOP since 2005, and is currently serving a sentence of 300 months following conviction in 2007 for violating 18 USC §2339B by conspiring to and attempting to provide material support to a Foreign Terrorist Organization. Exhibit A, 2-3

11.   PLAINTIFF transferred from FCI Ashland, Kentucky to FCI Danbury in July 2014 in order to be closer to family and his release address.  In July 2019 PLAINTIFF was forcibly transferred from FCI Danbury to FCI Loretto after being found guilty of violating Prison Rule 212 participating in or organizing group demonstration, "Food Strike". Exhibit A, 4

12.   PLAINTIFF alleges he is not guilty of violating Prison Rule 212; but that he was found guilty through unfair and biased hearing.  PLAINTIFF alleges the real reason he was found guilty and then transferred was in retaliation for PLAINTIFF'S lawsuit under Religious Freedom Reformation Act which he filed against FCI Danbury regarding Muslim Prayer in congregation outside of the chapel, 3:17-cv-00749-VAB, District Court of Connecticut. That civil action was made moot on motion by FCI Danbury to dismiss due to transfer of PLAINTIFF out of FCI Danbury, which caused PLAINTIFF to lose standing in the case. PLAINTIFF also alleges he was transferrd as an attempt by FCI Danbury to prevent a second lawsuit PLAINTIFF intended to file against FCI Danbury regarding fraudulent pricing practices in prison commissary, unjust enrichment, false advertising, constitutional violations against PLAINTIFF and other Muslim inmates, and violation of FBOP policy on price of religious items.  DEFENDANTS  were well aware of imminent second lawsuit long before the "Food Strike".  Still, PLAINTIFF managed to file that second lawsuit against FCI Danbury after arriving at FCI Loretto despite the transfer.  3:20-cv-000008, District Court of Connecticut. Exhibit B

## B) Food Strike:

13.   PLAINTIFF had not been found guilty of committing any violation of Prison Rules from the time he arrived at FCI Danbury in July 2014 until the "Food Strike", which began 5 February 2019. Exhibit A, 52-56

14.  The week prior to the "Food Strike" there was a smoke condition in the prison laundry, which on information and belief, was caused by a pair of rubberized gloves inadvertently put into the dryer.  But prison staff inexplicably concluded that the smoke condition was somehow related to excess inmate property.  Consequently, on Monday 4 February Unit Manager Moore announced in each inmate housing unit that under-the-bed storage bins would be confiscated allegedly due to fire hazard, forcing inmates to dispose of personal property.  Exhibit A, 21-22

15.  This deprivation was the crowning hardship of many other hardships imposed on inmates at FCI Danbury by prison administration over the previous couple of years that inmates viewed as unnecessary and oppressive.  Inmates decided that the following 3 days they would not go to eat in the prison cafeteria, hoping that the Regional Director would intervene.  Exhibit A, 10-19 and 23

16.  PLAINTIFF had nothing to do with planning the "Food Strike"; he was only aware of it because of discussions among other inmates around him in the housing unit, in recreation, and in the prison cafeteria.  PLAINTIFF was not specifically accused of being an organizer, nor was it ever alleged that any evidence even existed to that effect.  Exhibit A, 23

17.  According to prison officials, the "Food Strike" began 11:00 5 February. On information and belief, only around 50 inmates out of around 800 inmates went to eat lunch.  PLAINTIFF'S housing unit was never called to eat because his housing unit was last on the meal rotation; and the meal rotation was halted prematurely due to low inmate turnout.  Exhibit A, 25-26

18.  Around 07:00 on 6 February PLAINTIFF was removed from his housing unit and placed in SHU, and on 13 March he was found guilty of being a participant.  Exhibit A, 32 and 36-37

19.  At the DHO hearing PLAINTIFF presented DHO Fulger with written sworn statements alleging among other things that he was being falsely charged in retaliation for his pending lawsuit under RFRA against FCI Danbury.  Exhibit C

20.  PLAINTIFF also noted as an alibi defense that he could not have been a participant because his housing unit was never called to eat.  DHO Fulger responded, "That is probably true."  Despite agreeing that PLAINTIFF'S alibi was true, DHO Fulger found PLAINTIFF guilty, and then added, "This will probably be overturned on appeal."  Exhibit A 37-38

C) Appeal:

21.  PLAINTIFF filed a timely appeal using administrative remedy process by filing form BP-10 with the Northeast Regional Director.  PLAINTIFF alleged retaliation; unfair hearing, since he was found guilty despite alibi acknowledged by DHO Fulger as true; violation of Equal Protection clause; use of falsified evidence; Rule 212 unconstitutional as applied due to peaceful nature of the protest, without any disobedience or harm.  Exhibit A, 39-40

22.  PLAINTIFF documented his appeal using prison legal mail system and using certified mail.  United States Postal Service (USPS) verified delivery on 1 April 2019 at 2:39 P.M.  Regional Director stated deadline was 2 April, notwithstanding prison mailbox rule, (Houston v. Lack).  Exhibit A, 40

23.  On 27 July 2019 while in transit from FCI Danbury to FCI Loretto PLAINTIFF was notified by National Director FBOP that Northeast Regional Director claimed there was no appeal on file from PLAINTIFF.  That was the reason given by the National Director for rejecting PLAINTIFF'S appeal to the Central Office.  Exhibit A, 44; Exhibit D; Exhibit E

24.  On arrival at FCI Loretto PLAINTIFF attempted to file a second appeal with Northeast Regional Director, and it was rejected as "untimely".  Exhibit A, 45-47 Exhibit F, Exhibit G

25.  As per Ross v. Blake, 136 S.Ct. 1850 (2016) PLAINTIFF exhausted administrative remedies available to him.  ("[A] grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machinations ...")

26.  PLAINTIFF filed an extensive appeal under §2241 in United States District Court, Western District of Pennsylvania, 3:20-cv-000059-KAP.

D) Claims:  i)  The charge against PLAINTIFF was false.

27.  The charge against PLAINTIFF was based on a targeted interview done on 5 February 2019 in which the interviewer claimed PLAINTIFF admitted to being a participant in the "Food Strike".  Exhibit H

28.  PLAINTIFF immediately suspected he was being targeted because the interviewer bypassed many other inmates on entering PLAINTIFF'S housing unit, and headed straight to PLAINTIFF'S bunk, then ordered PLAINTIFF into an office as the first one to be interrogated.  Exhibit A, 28

29.  PLAINTIFF filed his own sworn statements with DHO denying that he admitted being a participant; PLAINTIFF admitted supporting the reasons for the "Food Strike", and enumerated them during the interview.  Exhibit C

30.  PLAINTIFF discussed the charge against him with other inmates, several of whom independently (of PLAINTIFF and of each other) alleged they were falsely charged because the interviewer claimed they admitted being participants. Exhibit A, 48-49  Exhibit I

31.  PLAINTIFF and his staff representative were denied an opportunity to review the interview form at DHO hearing; and FBOP has not provided it to PLAINTIFF more than a year after it was requested by PLAINTIFF through FOIA. Exhibit A, 36  Exhibit J

32.  PLAINTIFF pointed out in sworn statements to DHO that he could not have been a participant because his housing unit, which was last on the meal rotation, was never called to eat since the meal rotation was terminated prematurely due to low inmate turnout.  DHO Fulger agreed, "That is probably true"; nevertheless, he found PLAINTIFF guilty, adding "This will probably be overturned on appeal."  Exhibit C; Exhibit A 37

ii)  PLAINTIFF did not receive a fair hearing.

33.  PLAINTIFF'S alibi defense that his housing unit was never called to eat, therefore he could not have been a participant was accepted by DHO Fulger as being true.  DHO Fulger's guilty verdict after stating regarding PLAINTIFF'S alibi, "That is probably true", is contradictory, and proof of bias, an unfair hearing, and predetermination of guilt, regardless of the evidence. Exhibit A, 24 and 37

34.  Fulger's statement, "This will probably be overturned on appeal." shows that he was conscious enough of his own unfairness to realize that others reviewing his verdict would likely overturn it.  Exhibit A, 37

iii)  PLAINTIFF was denied equal protection under the law.

35.  PLAINTIFF witnessed scores of other inmates brought to SHU allegedly because they admitted under interrogation to being participants in the "Food Strike".  While the vast majority of the nearly 800 inmates at FCI Danbury did not go to eat, PLAINTIFF believes only around 100 to 150 inmates were brought to SHU as participants, 80 to 90% of whom were released back to general population within days of being detained, and were never charged.  On information and belief, they were given a verbal warning by S.I.S. Lt. Hayes to "Stay out of [her] lane" in the future.  There is nothing in the record to distinguish PLAINTIFF that would explain why he was treated differently from those inmates released from SHU without charges except PLAINTIFF'S lawsuit.  Exhibit A, 34 and 50

36.  Inmate Jeffrey Drowns was found guilty at DHO hearing, and on appeal he argued that the interrogatioan form was no more than an extrajudicial confession, which Black's Law Dictionary says , "such a confession must be corroborated by some other proof ... or else it is insufficient to warrant a conviction."  Black's Law Dictionary, 7th ed. 1999, p.293.  Exhibit A, 51

Due to this argument Northeast Regional Director reversed the guilty verdict against   inmate Drowns, and Mr. Drowns was returned to general population.  PLAINTIFF in his sworn statements to DHO stated the interrogation form was not valid as evidence, and made that argument again on appeal.  Due to interference, Northeast Regional Director did not respond; but PLAINTIFF was entitled to the same result as inmate Drowns under Equal Protection clause.

iv)  PLAINTIFF was prevented from appealing DHO verdict by illegal interference.

37.  PLAINTIFF documented that he mailed appeal within 20 days of DHO hearing that occurred 13 March; and the appeal was postmarked on the certified mail receipt 28 March 2019.  PLAINTIFF documented appeal was received on time; USPS verified it was delivered 1 April 2019, while Northeast Regional Director said the deadline was 2 April.  Despite this, the Regional Director claims PLAINTIFF'S appeal was not on file, according to the National Director of FBOP

when PLAINTIFF sent an appeal to Central Office. This was illegal interference with PLAINTIFF'S Due Process right, which is violation of a substantive constitutional right. The FBOP erected barriers that impeded PLAINTIFF'S right to petition governmetn in order to deprive PLAINTIFF of means to challenge unlawful conduct. Exhibit A, 40; Exhibit K

38. DHO Fulger stated that the guilty verdict he pronounced would "probably be overturned on appeal." Then PLAINTIFF'S appeal was blocked either by prison officials at FCI Danbury through criminal tampering with the mail, or by prison officials at Northeast Regional Director's office by discarding the appeal. There is no reasonable alternative explanation as to how USPS can verify delivery, yet Regional Director claimed there was no appeal from PLAINTIFF on file. Exhibit D; Exhibit E; Exhibit A, 37 and 40

39. Prison officials at FCI Danbury participated in interference at least by preventing PLAINTIFF from learning that Northeast Regional Director did not acknowledge receipt of PLAINTIFF'S appeal. When PLAINTIFF did not get a receipt, and other inmates were getting responses to their appeal, PLAINTIFF tried multiple times through several different avenues to find out what happened to his appeal. After getting verification of delivery from USPS website, and 60 days elapsed without a response, PLAINTIFF appealed to National Director FBOP.

40. Obstruction continued at Metropolitan Detention Center in Brooklyn and at FCI Loretto when prison administrators refused to help PLAINTIFF get a second appeal accepted as timely. While arguably it can be said this was not a constitutional violation in these latter instances, PLAINTIFF would argue these administrators were acting in concert and in cooperation with prison officials at FCI Danbury in order to obstruct PLAINTIFF'S appeal. Exhibit A, 41; Exhibit L

v) The charge against PLAINTIFF, the guilty verdict, and transfer were motivated by retaliation.

41. There was no rational basis to charge PLAINTIFF with violating Prison Rule 212 by participating in "Food Strike" because his housing unit was not called to eat. This was acknowledged by DHO Fulger at the hearing when he said, "That is probably true." By the same reasoning, there was no rational basis to find PLAINTIFF guilty of violating the rule. PLAINTIFF alleges the only evidence

against him was fabricated; and DHO Fulger refused to allow PLAINTIFF or his staff representative to review it. The FBOP refuses to give it to PLAINTIFF even after PLAINTIFF filed FOIA request. PLAINTIFF has never been given copy of DHO report either, which was part of FOIA request. Exhibit A, 37; Exhibit J

42. S.I.S. Lt. Adrian Hayes picked out PLAINTIFF as first to be interrogated about the "Food Strike", to be among the first to be detained in SHU, and selectively charged PLAINTIFF; then PLAINTIFF was found guilty regardless of the facts, and transferred out of FCI Danbury resulting in dismissal of most of PLAINTIFF'S lawsuit. Lt. Hayes made a sham showing of detaining between 100 and 150 other inmates in SHU allegedly because they admitted being participants in "Food Strike"; but they were released back to general population without being charged. Lt. Hayes violated PLAINTIFF'S right to equal protection under the law. Captain Whitley and Warden Licon-Vitale were active participants in this charade and endorsed it. The false charge and transfer were directly connected to the motion to dismiss PLAINTIFF'S lawsuit; and they were successful, causing the intended harm to PLAINTIFF. Exhibit A, 34 and 50

43. Prior to "Food Strike" PLAINTIFF had no incident reports and contributed positively to orderly operations of the prison. Exhibit A, 52-56

44. The previous warden, Donna Karen Williams, was being sued in her individual capacity by PLAINTIFF under RFRA regarding Muslim congregational prayer. She expressed her animus toward PLAINTIFF following this when she saw PLAINTIFF walking to the library, and she stepped in front of him blocking his path. She jutted a finger in PLAINTIFF'S face and demanded, "What is your name!" There was no other reason apparent to PLAINTIFF that could explain Warden Donna Karen Williams' behaviour towards PLAINTIFF other than the fact that PLAINTIFF was suing her in her individual capacity. Warden Donna Karen Williams hired Adrian Hayes from MDC/Brooklyn, where she was a custody corrections officer, and promoted her to lieutenant; and with no prior experience as lieutenant, placed her in charge of Special Investigations Service (S.I.S.) at FCI Danbury. On information and belief they were friends socially outside of work. Exhibit A, 20

45.  Warden M. Licon-Vitale was Associate Warden at MDC/Brooklyn prior to succeeding Warden Donna Karen Williams as warden at FCI Danbury.  On information and belief, she also was a personal friend of Adrian Hayes outside of work.

46.  PLAINTIFF alleges that S.I.S. Lt. Adrian Hayes and Warden Licon-Vitale acted in concert and cooperation with each other at the time of the "Food Strike" to detain PLAINTIFF in SHU, to falsely charge him as being a participant, using fabricated evidence to find PLAINTIFF guilty and to transfer PLAINTIFF out of FCI Danbury in retaliation for PLAINTIFF'S lawsuit against FCI Danbury and against their friend former warden, Donna Karen Williams, and thereby disposed of the lawsuit.

47.  Prison staff at FCI Danbury interfered with PLAINTIFF'S appeal of the guilty verdict, about which DHO Fulger said, "This will probably be overturned on appeal."  They concealed from PLAINTIFF the fact that Northeast Regional Director did not acknowledge receipt of PLAINTIFF'S appeal, despite PLAINTIFF'S ardent efforts to get assurance from administrators at FCI Danbury that the appeal had been received.  The only assurance PLAINTIFF was able to get was from USPS website; and upon obtaining that, and after 60 days had elapsed, PLAINTIFF appealed to National Director of FBOP.  Only after more than 4 months had elapsed, while PLAINTIFF was in transit and in SHU in MDC/Brooklyn was PLAINTIFF finally notified by National Director that Northeast Regional Director claimed he had no appeal from PLAINTIFF on file, which was the reason National Director rejected PLAINTIFF'S appeal.  Had PLAINTIFF been informed that Northeast Regional Direcctor claimed he had no appeal on file from PLAINTIFF on file, while PLAINTIFF was still in FCI Danbury, PLAINTIFF would have been able to refile his appeal with the support of unit manager at FCI Danbury, as PLAINTIFF did in the past.  Prison administrators at MDC/Brooklyn and FCI Loretto outright refused to help PLAINTIFF to refile his appeal, ending PLAINTIFF'S ability to petition FBOP for redress of constitutional violations against him. Exhibit A, 37 and 44; Exhibit D, Exhibit E

48.  The motives of S.I.S. Lt. Adrian Hayes and Warden Licon-Vitale became crystal clear when immediately after PLAINTIFF was put on the bus out of FCI Danbury, counsel filed motion to dismiss due to PLAINTIFF no longer being at FCI Danbury, and therefore no longer having standing. Exhibit B

49.  Warden Licon-Vitale and S.I.S. Lt. Hayes falsely claimed, without evidence that PLAINTIFF was somehow a threat to the safety and security of FCI Danbury.  Prior to the "Food Strike" PLAINTIFF contributed actively to the safety and security of the prison; PLAINTIFF was neither a participant nor an organizer in it.  Even if Warden Licon-Vitale and S.I.S. Lt. Hayes want to claim DHO verdict justified the claim, they have not provided any facts that distinguish PLAINTIFF from the hundreds of other inmates that, on information and belief admitted being participants, but were not charged.  If they want to use PLAINTIFF'S criminal conviction as the reason for labeling PLAINTIFF as a threat, PLAINTIFF counters this reasoning first by emphasizing that he maintains that he is innocent and wrongfully convicted.  PLAINTIFF has an open habeas corpus petition before the trial court since 2012; and now the strongest evidence presented against him in that case has come into question.  Even the facts of the case do not support any threat, where PLAINTIFF was charged with conspiring to and attempting to provide only medical care.  Secondly, PLAINTIFF has been on several prison compounds over his 15 years in prison, and no one to his knowledge previously labeled him as a threat to safety and security of a prison.  Thirdly, PLAINTIFF had been at FCI Danbury since 2014 with no disruptive behavior, and no previous administrators at FCI Danbury called him a threat to the safety and security of the prison.  This appellation was devised to rationalize a retaliatory transfer, and it has no basis in fact.  Exhibit A, 52-56

50.  The "Food Strike" itself was not a threat to the safety and security of FCI Danbury.  PLAINTIFF argued in his sworn statements to DHO and on appeal that it was a legitimate and permissible exercise of a First Amendment right in prison whereby there was no disobedience, no violence or threat of violence, no coercion, no destruction of property, no unauthorized occupation or obstruction of prison facilities, and no noise.  PLAINTIFF contends Prison Rule 212 participating in or organizing group demonstration is unconstitutional as applied in this circumstance.  PLAINTIFF therefore asserts that even if the court upholds DHO findings that PLAINTIFF was a participant, the charge was unconstitutional, and PLAINTIFF without doubt was not a threat

to the safety and security of FCI Danbury.  The term was applied to PLAINTIFF merely as a tactic to justify a transfer that was in actuality a retaliatory transfer for PLAINTIFF'S lawsuit against Warden Donna Karen Williams and FCI Danbury.  Exhibit A, 30; Exhibit C

vi)  <u>PLAINTIFF was harmed by retaliation and constitutional violations.</u>

51.  PLAINTIFF was harmed due to retaliation and constitutional violations when, as a result, PLAINTIFF'S lawsuit regarding Muslim prayer in congregation was made moot.  Muslim prayer in congregation is a highly held religious obligation of Islam for PLAINTIFF, and his passion for it motivated him to invest his meager financial resources in order to file suit; it was a major sacrifice for which PLAINTIFF only hoped for DECLARATORY and INJUNCTIVE relief before the suit was taken over by Muslim Advocates, and COMPENSATORY and PUNITIVE damages were added. DEFENDANTS gravely injured PLAINTIFF by their retaliation and loss of PLAINTIFF'S objective that was near and dear to his heart.  Exhibit A, 57-58; Exhibit B

52.  Due to these injuries from retaliation PLAINTIFF is entitled to more COMPENSATORY and PUNITIVE damages.  DEFENDANTS knew they would and intended to cause harm to PLAINTIFF.

53.  PLAINTIFF was further harmed due to 124 days spent in SHU that was unjustified because PLAINTIFF was targeted, falsely charged, and found guilty of the false charge, causing loss of 87 days good conduct time, $100.00 fine, and loss of commissary and telephone privileges.

54.  PLAINTIFF was further harmed by irreparable damage to family relationships. PLAINTIFF has two children living in Florida who had to cancel a planned visit because they did not know what happened to PLAINTIF or where he was.  Now PLAINTIFF is in a remote prison making it difficult even for family in New York City to visit.  Now Covid-19 has caused prison authorities to bar all visitors indefinitely.

55.  DEFENDANTS intentionally violated PLAINTIFF'S substantive First Amendment right to petition government when they collectively blocked PLAINTIFF'S appeal of guilty verdict from DHO, which according to DHO Fulger, probably would have been overturned, and likely would have prevented PLAINTIFF'S transfer to FCI Loretto.

V) EXHAUSTION OF LEGAL REMEDIES

56.   PLAINTIFF, RAFIQ SABIR used prison grievance procedure available at FCI Danbury to try and resolve the problem.  On 28 March 2019 PLAINTIFF filed appeal of DHO verdict and included in that appeal complaints herein described.  The Northeast Regional Director claimed he did not receive the appeal, even though USPS documented its delivery in a timely manner.  PLAINTIFF appealed to the National Director, totally unaware of the fact that Northeast Regional Director would claim he did not receive the appeal.  The appeal was rejected by the National Director, and the Regional Director refused to accept a second appeal. PLAINTIFF'S appeal was effectively blocked by FBOP, so PLAINTIFF exhausted the administrative remedies available to him.  Ross v. Blake, 136 S.Ct. 1850(2016).

## VI) LEGAL CLAIMS

57.   PLAINTIFF realleges and incorporates by reference paragraphs 1-56.

58.   The retaliation of DEFENDANTS through false charge, unfair DHO hearing, disciplinary transfer, violation of PLAINTIFF'S First Amendment right to petition government and thereby having PLAINTIFF'S lawsuit dismissed, violating PLAINTIFF'S Fifth Amendment right to Equal Protection Under the Law, violation of PLAINTIFF'S First Amendment right to petition government by interfering with PLAINTIFF'S appeal of DHO findings, violating PLAINTIFF'S right to liberty in prison by unjust confinement in SHU, violating PLAINTIFF'S right to liberty by unjust loss of 87 days good conduct time credit, and by causing tremendous serious harm to PLAINTIFF by transferring him to a remote prison as part of the retaliation.

59.   PLAINTIFF has no plain, adequate or complete remedy at law to redress the wrongs described herein.  PLAINTIFF has been and will continue to be injured by the conduct of DEFENDANTS unless this COURT grants DECLARATORY and INJUNCTIVE relief which PLAINTIFF seeks.

## VII) PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully prays that this COURT enter judgment granting PLAINTIFF:

60.   A DECLARATION that the acts and omissions described herein violated PLAINTIFF'S rights under the Constitution and Laws of the United States.

61.  A PRELIMINARY AND PERMANENT INJUNCTION ordering DEFENDANTS to cease all retaliatory actions against PLAINTIFF.

62.  COMPENSATORY damages in the amount of $300,000.00 against each DEFENDANT jointly and severally.

63.  PUNITIVE damages in the amount of $500,000.00 against each DEFENDANT.

64.  A jury trial on all issues triable by jury.

65.  PLAINTIFF'S costs in this suit.

66.  Any additional relief this COURT deems just, proper, and equitable.

DATED: _____ 16 September 2020

Respectfully Submitted,

RAFIQ SABIR #55312-066

Federal Correctional Institution, Loretto

Post Office Box 1000

Cresson, Pennsylvania    16630


## VERIFICATION

I have read the foregoing COMPLAINT and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true.  I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Executed at:  FCI Loretto        On: 16 September 2020        _____
              Post Office Box 1000                               RAFIQ SABIR
              Cresson, Pennsylvania    16630