# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RAFIQ SABIR,
*Plaintiff*,

v.

No. 3:20-CV-01552 (VAB)

WARDEN M. LICON-VITALE, et al.,
*Defendants*.

## INITIAL REVIEW ORDER

Rafiq Sabir ("Plaintiff") is a federal inmate whose address on file with the Court is the Federal Correctional Center in Butner, North Carolina. *See* Notice of Change of Address, ECF No. 4 (Oct. 13, 2021). He has filed a Complaint under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"); the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706; and the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, against Warden M. Licon-Vitale, Special Investigative Service ("S.I.S.") Lieutenant Adrian Hayes, Captain Whitley, Disciplinary Hearing Officer ("D.H.O.") Fulger, and Northeast Regional Director J. Ray Ormond. *See* Compl. at 1–2, ECF No. 1 (Oct. 13, 2020).

The allegations arise from Mr. Sabir's confinement in the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury") from February 2019 to July 2019.

For the reasons set forth below, the Complaint is **DISMISSED**.

## I.        BACKGROUND[1]

Mr. Sabir has been in the custody of the Federal Bureau of Prisons since 2005. Compl. ¶

---

[1] The factual allegations are drawn from the Complaint, *see* Compl. at 2–12, and the exhibits attached to the Complaint, *see* Exs. A–N to Compl., ECF No. 1-2 (Oct. 13, 2020). For the purposes of this motion, all allegations

10. He is serving a sentence of 300 months, imposed in 2007, under his conviction for conspiring to and attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B. *Id.* In July 2014, prison officials at the Federal Correctional Institution in Ashland, Kentucky transferred Mr. Sabir to FCI Danbury. *Id.* ¶ 11.

At some point during the week preceding February 5, 2019, there was a "smoke condition" in the prison laundry at FCI Danbury. *Id.* ¶ 14. Mr. Sabir believes that the smoke was caused by someone leaving a pair of rubberized gloves in one of the dryers. *Id.* On February 4, 2019, a unit manager allegedly announced that the inmate underbed storage bins had been deemed to be a fire hazard and would be confiscated. *Id.* Thus, inmates allegedly were forced to dispose of property items in their storage bins. *Id.* Later that day or during the morning of February 5, 2019, Mr. Sabir allegedly learned that a group of inmates had decided to passively protest the confiscation of their underbed storage bins by refusing to go to the prison cafeteria to eat their meals for three days. *Id.* ¶¶ 14–15. The inmates allegedly hoped that this passive protest would prompt the Regional Director of the Bureau of Prisons to intervene in the matter. *Id.* Mr. Sabir was not involved in planning the food strike. *Id.* ¶ 16.

The food strike allegedly began at 11:00 a.m. on February 5, 2019, when only 50 inmates out of approximately 800 inmates at FCI Danbury went to the cafeteria to eat lunch. *Id.* ¶ 17. Mr. Sabir's housing unit, however, allegedly was never called to lunch that day. *Id.* Later that day, an unidentified prison official allegedly entered Mr. Sabir's housing unit and ordered him to an office to be questioned about the food strike. *Id.* ¶¶ 27–28. During the interview, Mr. Sabir allegedly admitted to supporting the reasons that other inmates had engaged in the food strike but did not admit to participating in the food strike. *Id.* ¶ 29. In documenting the interview, however,

---

will be accepted as true.                                    2

the prison official allegedly noted that Mr. Sabir had admitted to being a participant in the food strike. *Id.* ¶¶ 27, 29.

At 7:00 p.m. on February 6, 2019, a prison official allegedly removed Mr. Sabir from his cell, and placed him in a cell in the Special Housing Unit ("SHU"). *Id.* ¶ 18. On February 26, 2019, after the completion of an investigation of Mr. Sabir's involvement in the food strike, S.I.S. Lieutenant Hayes allegedly issued Mr. Sabir an Incident Report charging him with engaging in or encouraging a group demonstration in violation of Prohibited Act Code 212. *See* Ex. H to Compl., ECF No. 1-2 (Oct. 13, 2020). Mr. Sabir allegedly discussed the charge against him with other inmates, who also claimed to have been falsely charged with participating in the food strike. Compl. ¶ 30.

At a hearing held on March 13, 2019, Mr. Sabir allegedly presented Disciplinary Hearing Officer Fulger with a written sworn statement indicating that he had been falsely charged in retaliation for his having filed a lawsuit against prison officials at FCI Danbury and that he could not have been a participant in the food strike on February 5, 2019 because he was never called to the cafeteria to eat lunch that day. *Id.* ¶¶ 19–20, 32; *see* Ex. C to Compl., ECF No. 1-2 (Oct. 13, 2020) ("Formal Statement for DHO Hearing in Response to Incident Report for Offenses 212"). Hearing Officer Fulger allegedly acknowledged that Mr. Sabir may not have been called to lunch on February 5, 2019. Compl. ¶¶ 19–20, 32. Despite this evidence, Disciplinary Hearing Officer Fulger allegedly found Mr. Sabir guilty of the charge of engaging in or encouraging a group demonstration and sanctioned him to a loss of commissary and telephone privileges, a loss of 68 days of good time credit, and a $100.00 fine. *Id.* ¶¶ 18–20, 32, 53. After imposing these sanctions, Disciplinary Hearing Officer Fulger allegedly remarked that the guilty finding would

probably be overturned on appeal. *Id.* ¶ 32. Mr. Sabir remained in the SHU for 124 days. *Id.* ¶ 53.

Mr. Sabir allegedly appealed the guilty finding and sanctions to the Northeast Regional Director of the Bureau of Prisons by completing a BP-10 administrative remedy form. *Id.* ¶ 21. Mr. Sabir alleged*, inter alia*, that the disciplinary hearing was unfair, the guilty finding was based on false evidence as well as insufficient evidence, the incident report was issued for retaliatory reasons, and that Prohibited Act Code 212 was unconstitutional as applied to a peaceful protest. *Id.* Mr. Sabir allegedly requested that the appeal be sent to the Northeast Regional Office by certified mail. *Id.* ¶ 22. On March 28, 2019, the United States Postal Service allegedly postmarked the envelope containing Mr. Sabir's BP-10 appeal. *Id.*; Ex. K to Compl., ECF No. 1-2 (Oct. 13, 2020). The United States Postal Service allegedly subsequently verified a postal service worker had delivered the envelope to an individual at the address of the Northeast Regional Office in Philadelphia, Pennsylvania on April 1, 2019. *Id.*

As of June 3, 2019, Mr. Sabir allegedly had not received a response to his BP-10 appeal of the disciplinary finding and sanctions. Ex. D to Compl., ECF No. 1-2 (Oct. 13, 2020). On that date, he allegedly completed a BP-11 form to appeal the guilty finding and sanctions to the Central Office of the Bureau of Prisons. *Id.* at 22–23. On June 10, 2019, a mail room staff member alleged picked up the BP-11 appeal from Mr. Sabir to be mailed to the Central Office of the Bureau of Prisons. *Id.*

On July 10, 2019, Warden Licon-Vitale allegedly transferred Mr. Sabir from FCI Danbury to the Metropolitan Detention Center ("MDC") in Brooklyn. Compl. ¶¶ 3, 47. On or about July 27, 2019, Mr. Sabir allegedly received a notice from the Administrative Remedy

Coordinator at the Central Office of the Bureau of Prisons dated July 16, 2019, indicating that his BP-11 appeal had been received on June 18, 2021 and was rejected because there was no record in the Bureau of Prisons' computer database, known as "SENTRY," of a BP-10 appeal having been filed by Mr. Sabir with the Northeast Regional Office. *Id.* ¶ 23; Ex. E to Compl., ECF No. 1-2 (Oct. 13, 2020).

On July 28, 2019, Mr. Sabir allegedly asked a staff member at MDC Brooklyn to draft a letter stating that he had attempted to mail the first BP-10 appeal to the Northeast Regional Office on March 28, 2019 and that the United States Postal Service had confirmed delivery of the appeal on April 1, 2019. Compl. ¶ 47; Ex. M to Compl., ECF No. 1-2 (Oct. 13, 2020). An associate warden at MDC Brooklyn allegedly declined to assist Mr. Sabir because the certified mail receipt indicating when the first appeal had been delivered to the Northeast Regional Office could not be retrieved from Mr. Sabir's property. *Id.*

On August 4, 2019, Mr. Sabir allegedly completed and mailed a second BP-10 appeal of the disciplinary finding and sanctions to the Northeast Regional Office of the Bureau of Prisons. Compl. ¶ 24; Ex. F to Compl., ECF No. 1-2 (Oct. 13, 2020).

On September 13, 2019, prison officials at MDC Brooklyn allegedly transferred Mr. Sabir to the Federal Correctional Institution in Loretto, Pennsylvania. Ex. N to Compl., ECF No. 1-2 (Oct. 13, 2020); Compl. ¶ 3. On September 26, 2019, the Administrative Remedy Coordinator at the Northeast Regional Office of the Bureau of Prisons allegedly rejected the BP-10 appeal as untimely because it had not been received within twenty days of Mr. Sabir's receipt of the disciplinary hearing officer's decision, or by April 2, 2019. Compl. ¶ 24; Ex. G to Compl., ECF No. 1-2 (Oct. 13, 2020). The Administrative Remedy Coordinator allegedly informed Mr.

Sabir that he could resubmit his appeal hearing within ten days with a verification from a staff member stating that the reason for the untimely filing was not his fault. *Id.*

On September 15, 2019, Mr. Sabir allegedly asked his unit manager at FCI Loretto to draft a letter stating that he had attempted to mail the first BP-10 appeal to the Northeast Regional Office on March 28, 2019 and that the United States Postal Service had confirmed delivery of the appeal on April 1, 2019. Ex. N to Compl., ECF No. 1-2 (Oct. 13, 2020). On October 10, 2019, the unit manager allegedly declined to assist Mr. Sabir. *Id.* Mr. Sabir does not allege that he made any other attempts to re-submit the BP-10 appeal to the Northeast Regional Office.

## II.        STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*; *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915(a) & (b)(1))). This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d

106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks and citation omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.      DISCUSSION

Mr. Sabir contends that Defendants retaliated against him for pursuing a lawsuit in this Court in violation of the First Amendment by falsely charging and finding him guilty of participating in or encouraging a group demonstration in connection with a food strike by inmates at FCI Danbury on February 5, 2019 and transferring him on July 10, 2019 to another federal prison facility; treated him differently than other inmates who participated in the food strike in violation of the Fifth Amendment; and deprived him of due process in connection with the hearing held and the finding of guilt as to the disciplinary charge, his placement in SHU for an extended period, and his transfer to another prison facility, in violation of the Fifth Amendment. He sues the Defendants in their individual and official capacities and seeks monetary, declaratory, and injunctive relief.

The Court will address these various claims in turn.

### A.      The RFRA Claim

In his jurisdictional statement on the first page of the Complaint, Mr. Sabir asserts that this action is "authorized" by RFRA. Compl. ¶ 1. Mr. Sabir does not otherwise refer to RFRA in the body of the Complaint. "[]RFRA[] prohibits the Federal Government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means." *Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020).

Although Mr. Sabir mentions that he previously filed a federal lawsuit, *Sabir v. Williams, et al.*, Case No. 3:17-CV-749 (VAB), including claims that prison officials at FCI Danbury had

violated his right to practice his religion under RFRA, he asserts no facts in this action regarding his freedom to practice his religion. Thus, Mr. Sabir has not alleged that any defendant violated his rights under RFRA.

Accordingly, the RFRA claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### B.    The APA Claim

The APA waives sovereign immunity for claims asserting wrongful agency action and seeking relief other than money damages. *Sabir v. Williams*, No. 3:17-CV-749 (VAB), 2017 WL 6514694, at *2 (D. Conn. Dec. 19, 2017) (internal citations omitted) ("*Sabir I*"). Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Judicial review, however, is limited to a "final agency action for which there is no other adequate remedy in [ ] court[.]" 5 U.S.C. § 704.

Challenges to prison policies or regulations have been permitted to proceed under the APA. *See, e.g.*, *Sabir v. Williams*, No. 3:20-CV-0008 (VAB), 2020 WL 3489522, at *8 (D. Conn. June 26, 2020) ("*Sabir II*") (permitting APA claim for injunctive relief "allegedly based on the prison policy of treating a Muslim religious item, prayer oil, like a non-religious commissary item that may be marked-up above cost" to proceed against warden, prison administrator, and director of bureau of prisons in their official capacities); *Sabir I*, 2017 WL 6514694, at *2 (claim against federal officials for non-monetary relief seeking to rescind Program Statement and permit congregate prayer cognizable under APA); *Berkun v. Terrell*, No. 12-CV-706 (JG), 2012 WL 3233897, at *3 (E.D.N.Y. Aug. 6, 2012) (complaint asserting claims that warden exercised discretion in manner that violated First Amendment by denying request to

receive jigsaw puzzle and that regulations governing possession of personal property are arbitrary and capricious under the APA).

Mr. Sabir alleges that this lawsuit is "authorized" under the APA. Compl. ¶ 1. But he does not otherwise refer to the APA or articulate the basis for a claim under the APA. Mr. Sabir does not challenge a policy or regulation. Rather, he claims that the conduct of the defendants in issuing a disciplinary report, in finding him guilty of the charge and imposing certain sanctions, in placing him in the SHU for an extended period, and his transfer to another prison facility violated his constitutional rights.

Because he challenges the conduct of the defendants rather than the validity of a particular prison policy, his allegations are not cognizable under the APA. *See, e.g., Gray v. Licon-Vitale*, No. 3:19-CV-1291 (MPS), 2020 WL 1532307, at *3 (D. Conn. Mar. 31, 2020) ("[T]he plaintiff does not challenge the validity of a prison policy but the way a policy was applied to him. Thus, the plaintiff can pursue a judicial remedy through a petition for writ of *habeas corpus* on his claims that the denial of email privileges deprived him of constitutional rights. The Court concludes that the plaintiff's claims equal protection, due process, and free speech claims are not cognizable under the APA." (citation omitted)).

Moreover, Mr. Sabir seeks monetary relief in addition to injunctive and declaratory relief. Thus, he cannot proceed under the APA. *See Polanco v. United States Drug Enforcement Administration*, 158 F.3d 647, 652 (2d Cir. 1998) ("Section 702 waives sovereign immunity in an action seeking equitable relief from wrongful agency action, except where . . . the action also seeks monetary relief . . . .").

Even if the Court were to consider only the request for injunctive relief—an order that the

Defendants stop retaliating against him—Mr. Sabir has not alleged that the defendants were engaging in retaliatory conduct at the time of the filing of this lawsuit. Thus, the injunctive relief sought is not related to, nor would it remedy the alleged constitutional violations described in, the Complaint or the validity of any prison policy.

Furthermore, Mr. Sabir has not alleged that there is no other adequate judicial remedy available to him. *See Gray,* 2020 WL 1532307, at *3 (concluding that "the plaintiff's equal protection, due process, and free speech claims are not cognizable under the APA" because "the plaintiff can pursue a judicial remedy through a petition for writ of *habeas corpus* on his claims that the denial of email privileges deprived him of constitutional rights" (citation omitted)); *see also Lucas v. Federal Bureau of Prisons*, No. 17-CV-1184 (VAB), 2018 WL 3038496, at *2 (S.D.N.Y. June 18, 2018) (dismissing claim of arbitrary and capricious revocation of email access under the APA because an alternative legal remedy existed to provide relief under 28 U.S.C. § 2241).

Accordingly, Mr. Sabir has not stated a plausible APA claim and the claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C.    *Bivens* Claims

In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). Thus, a *Bivens* claim may be brought against a federal official in his individual capacity, rather than his official capacity, and only for his own acts. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (*Bivens* authorized lawsuits for monetary damages against

11

federal officials in their individual capacities only); *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citing *Polanco,* 158 F.3d at 652). Accordingly, to the extent that Mr. Sabir seeks compensatory and punitive damages or injunctive and declaratory relief from the defendants in their official capacities for violations of his federal constitutional rights under *Bivens*, those claims for relief are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The Supreme Court has recognized a *Bivens* remedy under the Fourth Amendment's Search and Seizure Clause, the Eighth Amendment's Cruel and Unusual Punishment Clause, and the equal protection component of the Fifth Amendment's Due Process Clause. *See Bivens*, 403 U.S. at 389, 397 (implying a private cause of action under the Fourth Amendment for an unreasonable search and seizure claim against FBI agents for handcuffing a man in his own home without a warrant); *Davis v. Passman*, 442 U.S. 228, 246–48 (1979) (implying a *Bivens* claim under the equal protection component of the Fifth Amendment's Due Process Clause for gender discrimination arising from the defendant congressman's decision to fire his female secretary); *Carlson v. Green*, 446 U.S. 14, 16 n.1, 18–23 (1980) (implying a *Bivens* claim under the Eighth Amendment's prohibition against cruel and unusual punishment arising from prison officials' failure to treat an inmate's asthma that resulted in the inmate's death). Beyond these three factual circumstances, the Supreme Court has declined to recognize an implied cause of action for damages under the Constitution. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–58 (2017).

In *Ziglar*, the Supreme Court made clear that courts should not imply rights and remedies

under *Bivens* beyond the three contexts already recognized and set forth a two-step analysis to determine whether to imply a *Bivens* cause of action in a new context or to a new category of defendants. *See id.* at 1857 ("Given the notable change in the Court's approach to recognizing implied causes of action, [ ] the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."). The court must first determine whether the context in which the claim arises is new. *Id.* at 1859. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id.* Although not exhaustive, the Supreme Court offered the following "examples [that] might prove instructive":

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859–60.

If a case implicates a new *Bivens* context, the court then must consider whether there are "special factors counselling hesitation" in extending the *Bivens* remedy "in the absence of affirmative action by Congress." *Id.* at 1857 (internal quotation marks and citations omitted). The special factors inquiry requires courts to "consider the risk of interfering with the authority of the other branches, and . . . [to] ask whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[]' . . . and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of

allowing a damages action to proceed.'" *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Ziglar*, 137 S. Ct. at 1857–58). However, if "Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Ziglar*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (alteration in original).

Mr. Sabir alleges First Amendment retaliation and right to petition the government for redress of grievances claims and Fifth Amendment due process and equal protection claims, all allegedly arising from his confinement in prison. These claims, not one of the ones enumerated above, seek to apply the *Bivens* remedy in a new context. Thus, the Court must consider the alternative procedures for bringing the claims and any special factors counselling hesitation.

### 1.    The First Amendment Retaliation Claim

Mr. Sabir alleges that S.I.S. Hayes and Warden Licon-Vitale were involved in falsely charging him with participating in or encouraging the food strike on February 5, 2019; that Disciplinary Hearing Officer Fulger found him guilty of the charge absent sufficient evidence; that S.I.S. Hayes, Warden Licon-Vitale, and Captain Whitley were involved in maintaining him in the SHU for 124 days; and that Warden Licon-Vitale and Captain Whitley was involved in transferring him to another federal prison facility, all in retaliation for exercising his First Amendment right to file a lawsuit in 2017 against a prison warden at Danbury FCI. *See* Compl. ¶¶ 19–49 53, 58.

The Supreme Court, however, has never recognized, under *Bivens*, a First Amendment right to be free from retaliation. *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)

("We have never held that *Bivens* extends to First Amendment claims."). In general, the courts that have applied the *Ziglar* analysis to a claim of First Amendment retaliation by an inmate have noted the existing alternative remedial structures, including the BOP administrative grievance process and writ of *habeas corpus*. *See, e.g.*, *Widi v. Hudson*, No. 9:16-CV-1042 (FJS/DJS), 2019 WL 3491250, at *3 (N.D.N.Y. Aug. 1, 2019) (collecting cases); *Wilson v. Bolt*, No. 9:18-CV-416 (DNH/TWD), 2019 WL 3561742, at *3 (N.D.N.Y. Aug. 6, 2019) (dismissing First Amendment retaliation claim filed under *Bivens*), *appeal dismissed* (Nov. 18, 2019); *Silva v. Canarozzi*, No. 3:18-CV-1771 (MPS), 2019 WL 1596346, at *3 (D. Conn. Apr. 15, 2019) (declining to extend *Bivens* to federal inmate's First Amendment retaliation claim due to "the Supreme Court's expressed reluctance to recognize new causes of action under *Bivens*" and because inmate had "alternative avenue for relief" available to him in form of petition for writ of *habeas corpus* under 28 U.S.C. § 2241 (citation omitted)).

Moreover, consideration of special factors counsel against finding that an inmate's retaliation claim should give rise to a *Bivens* claim. As *Ziglar* explained, Congress's decision not to include "a standalone damages remedy against federal jailers" for prisoner abuse in the Prisoner Legislative Reform Act ("PLRA") counsels against extending a *Bivens* damages remedy to inmates seeking to extend *Bivens* in a new context.[2] *Ziglar*, 137 S. Ct. at 1865; *see also Oneil*

---

[2]In *Ziglar*, the Supreme Court provided:

> Some 15 years after Carlson was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse cases must be brought to federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. (citation omitted). But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this

*v. Rodriguez*, No. 18-CV-3287 (AMD) (LB), 2020 WL 5820548, at *4 (E.D.N.Y. Sept. 30, 2020) ("Congress' legislative action in the area of prisoners' rights through the PLRA, including by requiring an administrative process, weighs against extending a *Bivens* remedy to the plaintiff's [First Amendment retaliation, Eighth Amendment excessive force and Fifth Amendment equal protection] claims."); *Negron v. United States*, No. 19-CV-05442 (PMH), 2020 WL 5634304, at *8 (S.D.N.Y. Sept. 21, 2020) ("Regarding special factors that counsel against extending *Bivens* [to Fifth Amendment equal protection claim], courts are generally reluctant to review decisions related to prison administration—such as the decision to transfer an inmate to a new facility—because such decisions 'require[ ] expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.'") (quoting *Ojo v. United States*, 364 F. Supp. 3d 163, 176 (E.D.N.Y. 2019) (alteration in original)); *White v. Hess*, No. 14-CV-03339 (CBA) (LB), 2020 WL 1536379, at *6 (E.D.N.Y. Mar. 31, 2020) ("In sum, White's retaliation claim involves executive policies, implicates separation-of-power concerns, and threatens a large burden to both the judiciary and prison officials. [. . .] The Court thus conclude[s] that the special factors analysis prevents an extension of *Bivens* to cover White's First Amendment retaliation claims." (internal quotation marks and citations omitted) (alteration in original)).

Accordingly, the *Ziglar* analysis militates against affording a *Bivens* remedy for a federal inmate's First Amendment retaliation claim in light of the extant alternative remedies and special factors counselling against extension of the *Bivens* remedy. *See Ziglar*, 137 S. Ct. at 1858. As *Bivens* is not available to remedy First Amendment retaliation, Mr. Sabir's retaliation claim will

---

suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

be dismissed under 28 U.S.C. § 1915A(b)(1).

**2.    The First Amendment Right to Petition Government for Redress Claim**

Mr. Sabir contends that although the United States Postal Service delivered his BP-10 appeal of the guilty finding to the Northeast Regional Office in Philadelphia, Pennsylvania on April 1, 2019, he subsequently learned that the appeal had not been entered into the Bureau of Prisons administrative remedies computer database as having been received by the Northeast Regional Office. He speculates that either FCI prison officials tampered with the envelope containing the BP-10 appeal before mailing it or that someone at the Regional Office discarded the appeal before entering it into the computer database. He contends that either the FCI Danbury officials or the Regional Office officials interfered with or "blocked" his attempt to appeal the Disciplinary Hearing Officer Fulger's finding of guilt as to the disciplinary charge and the penalties imposed pursuant to that finding in violation of his First Amendment right to the petition the government for redress of grievances. Compl. ¶¶ 37–38, 58.

As a preliminary matter, Mr. Sabir does not allege that any of the named defendants interfered with or "blocked" his attempt to appeal the disciplinary finding and sanctions. Even if Mr. Sabir had asserted this First Amendment redress of grievances claim against a named defendant, as noted above, the Supreme Court "ha[s] never held that *Bivens* extends to First Amendment claims." *Reichle*, 566 U.S. at 663 n.4. Moreover, the same specials factors discussed with respect to the First Amendment retaliation claim counsel against finding that an inmate's First Amendment right to petition the government for redress of grievances claim should give rise to a *Bivens* claim.

---

*Id.*

Furthermore, there are no facts to suggest that Mr. Sabir could not file a petition for writ of *habeas corpus* to challenge the issuance of the disciplinary report, the guilty finding, or the sanctions imposed, including the loss of good time credit. *See, e.g.*, *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (observing that a "§ 2241 [petition] generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions" (emphasis in original) (citation omitted)); *Dov v. Bureau of Prisons*, No. 20-CV-9370 (SLC), 2021 WL 510154, at *2–*3 (S.D.N.Y. Feb. 11, 2021) ("Because exhaustion is not a statutory requirement, a prisoner may seek a waiver of the exhaustion requirement by demonstrating cause and prejudice if 'legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies'" prior to filing a section 2241 petition (quoting *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001)).

Accordingly, because *Bivens* is not available to remedy a First Amendment right petition the government for redress of grievances claim, that claim, even if asserted against the named defendants, will be dismissed under 28 U.S.C. § 1915A(b)(1).

### 3.     The Fifth Amendment Due Process Claim

 Mr. Sabir alleges that his Fifth Amendment due process rights were violated when S.I.S. Lieutenant Hayes, Warden Licon-Vitale, and Captain Whitley falsely charged him with participating in or encouraging a group demonstration; when Disciplinary Hearing Officer Fulger allegedly deprived him of a fair disciplinary hearing and found him guilty of the disciplinary

charge absent sufficient evidence and imposed a penalty resulting in the loss of 87 days of good

time credit; when Warden Licon-Vitale upheld the disciplinary finding and penalties; and

Warden Licon-Witale and Captain Whitley maintained him in the SHU for 124 days and

transferred him to another federal prison facility. Compl. ¶¶ 19–34, 46, 53, 58. He also suggests

that the alleged conduct of unnamed defendants in interfering with his attempt to appeal the

disciplinary finding and sanctions violated his Fifth Amendment due process rights. *Id.* ¶ 37.

Upon review of the *Ziglar* factors, the Court concludes that a *Bivens* remedy should not

be extended to claims of procedural due process violations in connection with: hearings held to

address disciplinary charges and to impose sanctions, including loss of good time credits; appeals

of disciplinary findings and sanctions; an inmate's placement and continued confinement in a

restrictive housing unit; or an inmate's transfer to another prison facility. The inmate has

available alternative remedies through the BOP administrative remedy program or a petition for

writ of *habeas corpus* under 28 U.S.C. § 2241.[3]  *See, e.g.*, *Martin v. Mihalik*, No. 19-CV-7979

(PMH), 2021 WL 1738458, at *6–*8 (S.D.N.Y. May 3, 2021) ("Here, Plaintiff had at least one

---

[3] Mr. Sabir acknowledges that he filed a petition for writ of *habeas corpus* under 28 U.S.C. § 2241 in the Western District of Pennsylvania. *See* Compl. ¶ 26 (*Sabir v. Warden FCI Loretto*, Case No. 3:20-cv-59 (SLH-KAP) (W.D. Pa. March 29, 2020)). The docket in that case reflects that on January 19, 2021, a judge entered an order that the petition be dismissed as moot because prison officials had expunged the February 2019 Incident Report charging Mr. Sabir with participating in or encouraging a group demonstration and had restored the 87 days of good time credit that Disciplinary Hearing Officer Fulger had revoked in connection with that Report. *See* ECF No. 10 (Memorandum Order). This information may be found on the Public Access to Court Electronic Records ("PACER") website at: https://pcl.uscourts.gov/pcl/pages/search/findCase.jsf. The Court considers that case here, as "[a] complaint is [] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks, brackets and citations omitted). Additionally, a court make take judicial notice of publicly filed documents. *See, e.g.*, *Kavowras v. N.Y. Times Co.,* 328 F.3d 50, 57 (2d Cir.2003 ("Judicial notice may be taken of public filings. . . .") (citations omitted); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (citation omitted); *Lefkowitz v. Bank of N.Y.*, 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009) ("Judicial notice may encompass the status of other lawsuits, including in other courts, and the substance of papers filed in those actions.") (citations omitted).

alternative avenue for potential relief. Indeed, to the extent Plaintiff seeks redress for the

improper imposition of disciplinary sanctions and the resulting loss of prison employment, she

may seek habeas relief. [. . .] The existence of this alternative, and potentially 'superior,' non-

*Bivens* remedy counsels against recognizing a new *Bivens* Fifth Amendment cause of action."

(citing *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 62 (E.D.N.Y. 2017)); *Silva*, 2019 WL 1596346, at

*1–*3 (declining to extend *Bivens* to federal inmate's Fifth Amendment due process claim

related to issuance of false incident report where inmate had "alternative avenue for relief"

available to him in form of petition for writ of *habeas corpus* under 28 U.S.C. § 2241 (citation

omitted)); *Sanford v. Bruno*, No. 17-CV-5132 (BMC), 2018 WL 2198759, at *1–*7 (E.D.N.Y.

May 14, 2018) ("The overlapping administrative and judicial remedies [in the form of a Section

2241 petition and Bureau of Prisons administrative remedy program] that already exist to address

plaintiff's [Fifth Amendment due process claim related to bed assignment decisions] are . . .

adequate for purposes of determining whether to imply a *Bivens* remedy—even though those

remedies did not work in this instance.").

Additionally, the same specials factors discussed with respect to the First Amendment

claims counsel against expansion of the *Bivens* remedy to Mr. Sabir's Fifth Amendment due

process claims.

Accordingly, in light of the alternative remedies available and the special factors

counselling against extension of the *Bivens* remedy in this context, Mr. Sabir's due process

claims based on violations of his rights in connection with his disciplinary hearing, the

sanctions/penalties imposed pursuant to the guilty finding, his appeal of the guilty finding and

sanctions imposed, his placement in the SHU for an extended period, and his transfer to another

prison facility will be dismissed under 28 U.S.C. § 1915A(b)(1).

### 4.     The Fifth Amendment Equal Protection Claim

Mr. Sabir maintains that his Fifth Amendment equal protection rights were violated because he was treated differently than other inmates who were initially placed in the SHU, after admitting to their involvement in the food strike but who were subsequently released from the unit with just a warning. Compl. ¶¶ 30–38. Mr. Sabir speculates that the difference in his treatment must have been due to the fact that he had previously filed a lawsuit against prison officials at FCI Danbury. *Id.* Mr. Sabir concedes, however, that there were other inmates, like himself, who were not involved in the food strike, but who were also falsely charged with a disciplinary infraction and were found guilty. *Id.*; Ex. I to Compl. at 28–31, ECF No. 1-2 (Oct. 13, 2020). At least one inmate was also transferred to another facility, like Mr. Sabir. *Id.*

Here, Mr. Sabir's claim is similar to the claim asserted in *Davis v. Passman*, 442 U.S. 228 (1979), to the extent it implicates the equal protection component of the Fifth Amendment's Due Process Clause. Mr. Sabir's equal protection claim concerning treatment of federal inmates for purposes of issuing disciplinary reports and imposing sanctions or penalties, however, is distinct from that of Ms. Davis's gender discrimination in employment claim asserted against a congressman. *See Davis*, 442 U.S. at 230, 235; *see also Negron*, 2020 WL 5634304, at *5–*9 (concluding inmate's equal protection claim that his transfer to a new facility was, at least in part, racially motivated, arose in "a new racial and/or religious context"); *Oneil*, 2020 WL 5820548, at *3 ("[A]lthough *Davis* recognized a remedy for violation of a person's Fifth Amendment rights, the claim at issue was gender discrimination, not an equal protection claim based on treatment in prison.").

Moreover, as the Supreme Court noted, Ms. Davis had "damages or nothing[,]" as an available remedy for the equal protection violation. *Id.* at 245. By contrast, Mr. Sabir has alternative remedies available by pursuing the BOP administrative remedies process or injunctive relief through a petition for writ of *habeas corpus* under 28 U.S.C. § 2241. *See Negron*, 2020 WL 5634304, at *8 ("Additionally, an alternative remedial process is available to Plaintiff to challenge the allegedly improper racially/religiously motivated transfer in the form of a habeas petition brought pursuant to 28 U.S.C. § 2241.") (citing *Gonzalez*, 269 F. Supp. 3d at 60 (dismissing Fifth Amendment *Bivens* claim because plaintiff had alternative remedies available to him including, *inter alia*, "the filing of a writ of habeas corpus")); *Sabir*, 2020 WL 3489522, at *6 (concluding that "Mr. Sabir's equal protection claim concerning prison commissary classifications is contextually distinct from a gender discrimination employment claim" and that he "has alternative remedies available through the Bureau of Prison's administrative remedies process or a different lawsuit seeking injunctive relief") (citing, *inter alia*, *Ojo*, 364 F. Supp. 3d at 175 (discussing alternative remedies available for equal protection claim and finding no implied *Bivens* remedy)).

Furthermore, the same special factors discussed with respect to the First Amendment retaliation and redress of grievances and Fifth Amendment due process claims counsel against expanding the *Bivens* remedy to Mr. Sabir's equal protection claim.

Accordingly, the claim asserted under the equal protection component of the Due Process Clause of the Fifth Amendment will be dismissed under 28 U.S.C. § 1915A(b)(1).

### 5.    Leave to Amend and Motion to Supplement

On October 13, 2021, Mr. Sabir filed a motion to supplement the pleadings, which seeks

22

to add a Federal Tort Claims Act ("FTCA") count; a conspiracy count; and a false arrest/false imprisonment count. *See* Mot. to Suppl. Pleadings, ECF No. 7 (Oct. 13, 2021) ("Mot. to Suppl.").

Courts in the Second Circuit apply the same standards to motions to supplement a complaint under Rule 15(d) of the Federal Rules of Civil Procedure as to motions to amend under Rule 15(a)(2). *See Shubert v. Town of Glastonbury*, No. 3:18-CV-00112 (MPS), 2020 WL 6395472, at *1 (D. Conn. Nov. 2, 2020). The court must determine whether the proposed amendment would be futile, whether the amendment was filed in bad faith, whether the amendment would cause undue delay, and whether the amendment would unduly prejudice the nonmoving party. *Id.* (citation omitted).

The Court will address each of the proposed amendments to the Complaint below.

### i.      Federal Tort Claims Act

Mr. Sabir seeks to add the United States as a defendant to enable him to pursue two Federal Torts Claims Act claims in this action: one for false arrest, false imprisonment, and abuse of process, and the second for lost property. Mot. to Suppl. ¶¶ 14–19.

In the first FTCA claim, Mr. Sabir seeks to assert claims for false arrest, false imprisonment, and abuse of process. *Id.* ¶ 14(a)-(c). He states that his claims are based on the dismissal of a lawsuit he filed against FCI Danbury for violating his rights under RFRA, his confinement for 155 days in restrictive housing, and his transfer to FCI Loretto.[4] *Id.* He contends that the suit is permitted under 28 U.S.C. § 2680(h). *Id.* ¶ 14. While Mr. Sabir is correct that §

---

[4] Mr. Sabir alleges that tort claim TRT-NER-2021-06134 was received by the Northeast Regional Office on July 26, 2021. Mot. to Suppl. ¶ 14. This action concerns claims for false arrest, false imprisonment, and abuse of process relating to his confinement is restrictive housing for 155 days. *Id.* ¶ 14(b). Mr. Sabir alleges that the tort claim was denied with an option to bring an action against the United States within six months of the notice. *Id.* ¶ 15. Mr. Sabir

2680(h) generally permits these claims against investigative or law enforcement officers of the United States, it does not mandate that such claims proceed on these facts.

The FTCA waives sovereign immunity and permits a lawsuit to proceed against the United States under circumstances where a private party, committing the same actions as a federal employee, would be liable under state law. *See* 28 U.S.C. § 1346(b). Mr. Sabir does not allege that he was arrested. He merely alleges that he was held under harsher conditions and transferred to a different facility. "Under common law, there is no claim for false imprisonment where the claim relates only to the conditions of confinement." *Williams v. Walter Ford*, No. 3:14-CV-1181(VAB), 2015 WL 8490910, at *8 (D. Conn. Dec. 10, 2015) (citing *Joyner v. Wezner*, No. 418200, 2000 WL 168385, at *4 (Conn. Super. Ct. Oct. 5, 2000)). Thus, Mr. Sabir cannot state a cognizable FTCA claim for false arrest or false imprisonment.

Under Connecticut law, "[a]n action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. The abuse occurs through the employment of process for a wrongful and malicious purpose to attain an unjustifiable end or an object that the particular process was not meant to effect. . . . In other words, the action focuses on the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed . . . ." *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 95 n.10 (2007) (internal quotation marks and citation omitted). To prevail on an abuse of process claim, Mr. Sabir must "establish that the defendant used a *judicial process* for an *improper purpose*." *Larobina v. McDonald,* 274 Conn. 394, 407 (2005). Mr. Sabir alleges that, after his transfer to a different correctional facility, the Government moved to dismiss a prior lawsuit of his. The only judicial process would be a

---

does not, however, attach the notice or indicate the date of the notice

motion to dismiss. Although Mr. Sabir objects to the dismissal, he does not allege that the motion was used for a purpose for which it was not designed. Thus, as he fails to allege facts meeting the elements of the state tort, he cannot state a cognizable FTCA claim for abuse of process. Amendment to add this FTCA claim therefore would be futile.

Mr. Sabir alleges that he filed a second tort claim[5] on May 7, 2021 regarding property allegedly lost when he was transferred from FCI Danbury in September 2019. Mot. to Suppl. ¶ 16. The claim was denied on June 30, 2021 because the claim was not presented within one year of the incident. *Id.* Mr. Sabir contends that this is incorrect and that he had two years to present his claim. *Id.*

While Mr. Sabir is correct that, in general, a tort claim against the United States must be presented in writing to the appropriate federal agency within two years after such claim accrues, 28 U.S.C. § 2401(b), he submitted his claim under 31 U.S.C.§ 3723, which requires that the claim must be presented to the head of the agency within one year after the claim accrues. *See* 31 U.S.C. § 3723(b) ("A claim under [31 U.S.C.§ 3723] may be allowed only if it is presented to the head of the agency within one year after it accrues."). As Mr. Sabir submitted his claim beyond this statute of limitations period, his claim is subject to dismissal. *See Adeyi v. FC Ft. Dix Heath Servs.*, No. 09-CV-5316 (JBS) (JS), 2012 WL 207 6520, at \*5 (D.N.J. June 7, 2012) ("To the extent Plaintiff asserts a claim for loss of his personal property under 31 U.S.C. § 3723, his claim is untimely under the limitations of 31 U.S.C. § 3723(b), and it will be dismissed.").

Furthermore, the Supreme Court has held that a federal prisoner cannot bring an FTCA action against the United States or BOP for lost property. *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 228 (2008) (BOP officers who allegedly lost inmate's property during transfer to

another prison fell within exception to FTCA for claims relating to detention of goods).

Accordingly, because there is no FTCA claim for lost property against BOP officers, supplementing the Complaint to add this claim would be futile.

### ii. Conspiracy

Mr. Sabir also seeks to add Unit Manager Moore and twelve unidentified staff members in their individual and official capacities and the United States as defendants. *See* Mot. to Suppl. ¶¶ 9–12, 20–40. His supplemental claims are a claim for conspiracy under 42 U.S.C. § 1985(3) to deprive him of his Fifth Amendment rights to due process and equal protection, the claims asserted in the original Complaint. *Id.* ¶¶ 20–40. More specifically, Mr. Sabir alleges that these Defendants conspired to abuse the process at his prison disciplinary hearing to transfer him to another facility and moot his lawsuit under the RFRA for lack of standing; further, Mr. Sabir alleges that Unit Manager Moore and the other twelve persons knew about the conspiracy, but did nothing to in response. *Id.* ¶¶ 9–12.

Mr. Sabir seeks to add these individual defendants in their individual and official capacities. *Id.* ¶¶ 11, 13. But *Bivens* authorizes lawsuits for monetary damages against federal officials in their individual capacities only. *See FDIC v. Meyer*, 510 U.S. 471, 485–86 (1994). Accordingly, all official capacity claims must be dismissed.

Section 1985(3) prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus. *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or any other constitutional right. *Griffin v. Breckenridge*, 403 U.S. 88, 101–02

---

[5] The case number provided for this second tort claim is TRT-NER-2021-05357. Mot. to Suppl. ¶ 16.

(1971).

These proposed Defendants are all BOP officials or officers. The Court thus first must

address whether section 1985(3) applies to federal officers and officials. Mr. Sabir cites *Iqbal v.*

*Hasty* as support for his assertion of the section 1985(3) claim against federal officers. In *Iqbal*,

the Second Circuit states:

> Although this Court has had no occasion since *Gregoire* [*v. Biddle*,
> 177 F.2d 579 (2d Cir. 1949)] to consider whether section 1985(3)
> applies to conspiracies among federal officials, numerous courts of
> appeals, applying *Griffin*, have concluded that section 1985(3)
> applies to federal officers. . . . We agree that the development of
> case law since *Gregoire* has eroded any basis for interpreting that
> decision to render section 1985(3) inapplicable to federal officials.
> And we also agree that, in the absence of prior Second Circuit case
> law on point, it was not clearly established in 2001 that section
> 1985(3) applied to federal officials.

490 F.3d at 176 (internal citations omitted). The Second Circuit did not, however, hold that

section 1985(3) applies to federal officers. In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the

Supreme Court considered a section 1985(3) claim against federal officials. The Court did not

address whether the claim was appropriately asserted against federal officials, instead addressing

only whether the officials were entitled to qualified immunity. *Id.* at 1866–67.

In 2019, another court within this Circuit conducted an analysis of the question. *See*

*Alharbi v. Miller*, 368 F. Supp. 3d 527, 566–68 (E.D.N.Y. 2019), *aff'd in part, dismissed in part*,

829 F. App'x 570 (2d Cir. 2020) (summary order). That court noted that section 1985 was

enacted as part of the Civil Rights Act of 1871, legislation intended to provide protection against

racial discrimination in the post-Civil War South and that, at that time, federal officials and the

federal government were championing civil rights; thus, it did not seem likely that the statute

was intended to apply to federal officials. *See id.* at 566–67. In addition, the court noted that if

section 1985(3) applied to federal officials, a *Bivens* action would be unnecessary to vindicate constitutional rights against federal officers and officials. *See id.* at 567. The court disagreed with the conclusion of the majority of district courts considering the issue and held that section 1985(3) does not apply to federal officials. *See id.* at 568.

Absent a clear pronouncement from the Supreme Court or Second Circuit that Section 1985(3) applies to conspiracy claims against federal officials, these Defendants are protected by qualified immunity on this claim. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An officer is protected by qualified immunity "unless the official's conduct violated a clearly established constitutional right." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). As the question of whether section 1985(3) applies to federal officials is not clearly established, the defendants are protected by qualified immunity on the section 1985(3) claims.

Further, even if section 1985(3) claims can be asserted against federal officials, the defendants are all BOP officials. "Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of [his or] her employment, are legally incapable of conspiring together." *Little v. City of New York*, 487 F. Supp. 2d 426, 441–42 (S.D.N.Y. 2007) (citations omitted).

The Second Circuit has affirmed the dismissal of section 1985(3) claims against municipal defendants under the intracorporate conspiracy doctrine. *See Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008). In a decision later abrogated on other grounds, a district court

within this Circuit applied the intracorporate conspiracy doctrine to preclude claims against

offices of the Board of Parole and its commissioners. *See Farid v. Bouey*, 554 F. Supp. 2d 301,

324 (N.D.N.Y. 2008). Courts in other Districts have applied the intracorporate conspiracy

doctrine to preclude claims against BOP officers and staff. *See Boyd v. Driver*, No. CV V-06-22,

2016 WL 1222157, at *10 (S.D. Tex. Mar. 29. 2016) (applying intracorporate conspiracy

doctrine to claims against BOP officials), *adhered to on reconsideration*, 2016 WL 3916177

(S.D. Tex. July 20, 2016); *Amawi v. Walton*, No.13-CV-866 (JPG), 2013 WL 5346462, at *3

(S.D. Ill. Sept. 24, 2013) (extending intracorporate conspiracy doctrine where defendants were

all officials or former officials of BOP). In another case, a court granted qualified immunity

where it was not clear at the time of the underlying events whether the intracorporate conspiracy

doctrine barred claims against BOP correctional officers. *See Cox v. United States*, No. 2:17-CV-

02349 (CJC) (KES), 2019 WL 5580966, at *10–*11 (C.D. Cal. Aug. 30, 2019), *report and*

*recommendation adopted*, 2019 WL 5579533 (C.D. Cal. Oct. 29, 2019).

Although the Second Circuit has not yet applied the intracorporate conspiracy doctrine to

BOP officials, there is no clearly established law that the doctrine does not apply. Thus, the

defendants would again be protected by qualified immunity.

Finally, to state a conspiracy claim under section 1985(3), Mr. Sabir must allege the

elements of a conspiracy claim with sufficient specificity and must allege facts showing that the

conspiracy was motivated by racial invidious discriminatory animus. *See Garg v. Albany Indus.*

*Dev. Agency*, 899 F. Supp. 961, 970 (N.D.N.Y. 1995); *see also Thompson v. Kline*, 504 F. Supp.

3d 200, 211 (W.D.N.Y. 2020) ("Because conspiracy claims are 'so easily made and can

precipitate such protracted proceedings[,] . . . detailed fact pleading is required . . . .'" (quoting

*Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)). Here, Mr. Sabir describes the alleged events and assumes that everything must have occurred because there was a conspiracy. In addition, he fails to allege facts showing a racial or other class-based discriminatory animus. *See* Mot. to Suppl. ¶¶ 20–40.

Accordingly, the addition of the conspiracy claims also would be subject to dismissal for failure to state a cognizable claim, and therefore would be futile.

### iii.      False Arrest/False Imprisonment

Finally, Mr. Sabir seeks to add a claim for false arrest or false imprisonment based on his removal from general population to restrictive housing, but alleges no facts suggesting an arrest on any charge. His false arrest claim therefore will be dismissed. *See McGowan v. United States*, 94 F. Supp. 3d 382, 390 (E.D.N.Y. 2015), *aff'd*, 825 F.3d 118 (2d Cir. 2016) (dismissing false imprisonment claim because plaintiff, who was confined to a halfway house, "was already in custody and thus could not be arrested by the BOP, his custodian").

The Court therefore considers the claim as a false imprisonment claim only.  Liability for false imprisonment is based on the fact of confinement. Mr. Sabir is challenging his transfer from general population to restrictive housing, a change in the conditions of his confinement. Such allegations, however, are insufficient to support a false arrest claim. *See id.* at 391 ("If a private or state actor is entitled to hold a prisoner, liability for false imprisonment never rises or falls based on the conditions under which he is held."); *Pena v. Cook*, No. 3:19-CV-825 (KAD), 2019 WL 2579262, at *7 (D. Conn. June 24, 2019) ("Since Pena was already in custody, he fails to state a cognizable false imprisonment claim under state law based on the November 2018 transfer to more restrictive conditions."). Mr. Sabir thus fails to state a cognizable claim for false

arrest or false imprisonment.

Accordingly, as none of the claims Mr. Sabir seeks to add to this action are cognizable, leave to amend would be futile and will be denied.

**IV.    CONCLUSION**

The claims asserted under RFRA, the APA, and the First and Fifth Amendment claims asserted under *Bivens* are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The motion to supplement pleadings also is **DENIED**.

The Clerk of Court is respectfully directed to enter judgment for the Defendants and to close the case.

SO ORDERED at Bridgeport, Connecticut this 29th day of April, 2022.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge